T.C. Memo. 1997-474


UNITED STATES TAX COURT


DAVID D. PARRISH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21508-95.                    Filed October 20, 1997.


<u>Declan J. O'Donnell</u>, for petitioner.

<u>Loren B. Mark</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, <u>Judge</u>:  Respondent determined the following

deficiencies, additions to tax, and accuracy-related penalties

relating to petitioner's Federal income taxes:

| | | Additions to Tax | | Penalty |
| Year | Deficiency | Sec. 6651(a) | Sec. 6653(a) | Sec. 6662 |
| --- | --- | --- | --- | --- |
| 1988 | $25,257 | $5,564 | $1,263 | -- |
| 1989 | 115,540 | 28,825 | -- | $23,108 |

| 1990 | 55,238 | 13,738 | -- | 11,048 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are as follows:

1. Whether petitioner failed to report income. We hold that he did.

2. Whether petitioner, pursuant to section 1366, is entitled to deduct losses relating to M&L Business Machine Co., Inc. We hold that he is not so entitled.

3. Whether petitioner, pursuant to section 1401, is liable for self-employment tax. We hold that he is liable to the extent provided below.

4. Whether petitioner, pursuant to section 6651(a), is liable for additions to tax for failing to file his tax returns in a timely manner. We hold that he is liable.

5. Whether petitioner, pursuant to sections 6653(a) and 6662(a), is liable for an addition to tax and accuracy-related penalties for negligence. We hold that he is liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Kearney, Nebraska, at the time his petition was filed.

Petitioner is a psychiatrist. He earned his medical degree in 1955 from the University of Nebraska and then served a 1-year internship with the United States Public Health Service in New York, New York. In 1975, petitioner cofounded the Boulder Psychiatric Institute in Boulder, Colorado. In 1985, he sold his interest in the hospital and became affiliated with M&L Business Machine Co., Inc. (M&L).

M&L, an S corporation incorporated in Colorado, was formed in the 1970's to repair office equipment. During the 1980's Robert Joseph, Daniel Hatch, and petitioner acquired all of M&L's stock. Petitioner was M&L's vice president of human resources and served, with Mr. Hatch and Mr. Joseph, on M&L's board of directors.

During the years in issue, M&L operated a ponzi scheme that promised to pay interest to investors at rates ranging between 24 and 520 percent. M&L representatives told investors that funds invested in the company would be used to purchase equipment for resale. M&L used these funds, however, to pay interest to other investors. M&L did not file Federal income tax returns relating to the years in issue.

Petitioner withdrew funds from his bank accounts and accounts that he held jointly with his parents, William and Berdine Kotlarz, and invested these funds in M&L. In addition to an annual salary of $28,000 and monthly payments of $1,000 which

petitioner used to lease a Cadillac, M&L made monthly payments of $6,000 to petitioner. Petitioner routinely reinvested portions of these funds, and he borrowed funds from banks to make additional investments in M&L. During his tenure with M&L, petitioner made numerous solicitations to potential investors (i.e., associates, friends, and relatives). These solicitations resulted in over $1 million of investments in M&L. In return for these investments, brokers, investors, and M&L paid petitioner finder's fees of varying amounts.

In October of 1990, M&L filed a bankruptcy petition with the U.S. Bankruptcy Court for the District of Colorado. On December 18, 1990, the bankruptcy court removed M&L as debtor in possession and appointed a trustee. The trustee began a 3-month investigation of M&L's financial activities that revealed M&L (1) was operating ponzi and check-kiting schemes and (2) had no inventory from which creditors' claims could be satisfied. On July 17, 1991, petitioner filed a bankruptcy petition with the U.S. Bankruptcy Court for the District of Colorado.

To recover funds for M&L creditors, the trustee commenced adversarial proceedings against M&L investors and officers and alleged that these investors and officers had received preferential transfers or fraudulent conveyances. In August of 1991, the bankruptcy court assigned the accounting firm of Patten, MacPhee & Associates, Inc. (the firm) to assist the

trustee in determining who received funds from M&L during the 1-year period (from October 1989 through October 1990) prior to the filing of M&L's bankruptcy petition. The firm determined that during this period M&L transferred $375,452.01 to petitioner and that petitioner transferred $46,162 to M&L. The trustee then filed suit to recover funds from petitioner. On February 8, 1994, the bankruptcy court entered a judgment for $375,534.01 against petitioner. Petitioner subsequently reached an agreement requiring him to periodically remit 15 percent of his net income to the trustee.

Petitioner filed his 1988 and 1989 Federal income tax returns on April 26, 1991, and his 1990 return on December 28, 1992. In October of 1993 Gudrun Stacks, the IRS agent assigned to audit petitioner's returns, asked petitioner to provide bank and other records relating to M&L investments. On several other occasions Agent Stacks requested such records, but petitioner did not provide them. Other sources subsequently provided Agent Stacks with copies of M&L checks made payable to petitioner and petitioner's bank records. Agent Stacks analyzed bank records relating to petitioner's 1988 and 1989 tax years and examined M&L checks issued to petitioner during his 1990 tax year. Upon completing her analysis, Agent Stacks determined that petitioner had unreported income of $72,415, $386,663, and $165,822 for 1988, 1989, and 1990, respectively.

Based on the results of Agent Stacks' audit, respondent on July 20, 1995, issued a notice of deficiency to petitioner. Respondent subsequently conceded that Agent Stacks made an error in the analysis relating to petitioner's 1989 tax year and now contends that the correct amount of unreported income for 1989 is $238,834.27 rather than the $386,663 earlier determined.

OPINION

Respondent's determinations are presumed to be correct, and petitioner bears the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Mattingly v. United States, 924 F.2d 785, 787 (8th Cir. 1991).

I. Unreported Income

Gross income includes all income from whatever source derived. Sec. 61(a). If a taxpayer fails to maintain adequate records of taxable income, the Commissioner may reconstruct income in accordance with a method that clearly reflects the full amount of income received. Sec. 446(b); Rowell v. Commissioner, 884 F.2d 1085, 1087 (8th Cir. 1989), affg. T.C. Memo. 1988-410; Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965).

Respondent used the bank deposits method to reconstruct petitioner's income for 1988 and 1989. Bank deposits are prima facie evidence of income, Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), and under the bank deposits method, all money deposited into a taxpayer's bank account during a given period is

assumed to be taxable income, <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Respondent used the specific items method to reconstruct petitioner's income for 1990. This method requires proof of specific items of income that were omitted from the taxpayer's return. <u>United States v. Merrick</u>, 464 F.2d 1087, 1092 (10th Cir. 1972).

Petitioner acknowledges that he received, but did not report, monthly payments of $1,000 which petitioner used to lease a Cadillac. He also acknowledges that he received finder's fees of varying amounts but has not offered any explanation for his failure to report these funds. Petitioner contends that the remaining unreported funds are, pursuant to the open transaction doctrine, a return of principal.

The open transaction doctrine, which applies in rare and extraordinary circumstances, see <u>McShain v. Commissioner</u>, 71 T.C. 998, 1004 (1979), permits an investor to recover capital prior to recognizing gain. The Supreme Court in <u>Burnet v. Logan</u>, 283 U.S. 404, 413 (1931), established that this doctrine applies to deferred payment transactions where the realization of income is uncertain or contingent. The doctrine has also been applied to the purchase of notes at a discount where, at the time of acquisition, the investor was not reasonably certain that he would recover his cost and a major portion of the discount. <u>Underhill v. Commissioner</u>, 45 T.C. 489, 495 (1966).

Petitioner has failed to establish that the open transaction doctrine is applicable. Petitioner, on brief, contends that he loaned over $334,500 to M&L. This contention is based primarily on petitioner's testimony, which was vague, evasive, and otherwise unpersuasive. In an attempt to corroborate this testimony, petitioner presented scant and dubious documentation. Even if petitioner could establish that he loaned M&L these funds, the open transaction doctrine is not applicable, because petitioner did not have the requisite uncertainty relating to the recovery of his principal. Indeed, petitioner routinely received monthly payments from M&L and reinvested them in the company. Moreover, he encouraged friends and family to make investments in M&L.

Petitioner also contends that the payments he received from M&L should be treated as a return of principal because they were made to conceal a fraud. Petitioner relies on Greenberg v. Commissioner, T.C. Memo. 1996-281. In Greenberg, the taxpayers transferred funds to a ponzi scheme that purported to be a legitimate mortgage company. The taxpayers were passive investors and were paid monthly payments from the company's bank account. The Court was presented with sufficient evidence to determine the amount of funds paid and received by the taxpayers, and it held that the payments the taxpayers received were not interest because they were not compensation for the use or

forbearance of money.  Instead, the Court found that the payments were made to conceal the fraudulent misappropriation of the taxpayers' investment.

Greenberg v. Commissioner, supra, however, is distinguishable from this case.  Petitioner was not a passive investor but was a director and officer of M&L who encouraged investors to transfer over $1 million to M&L.  Moreover, petitioner failed to provide sufficient evidence to establish the amount of funds that he allegedly loaned to, or the amount of funds he received from, M&L.  Accordingly, we hold that petitioner failed to report income.

## II.  Losses Relating to M&L

Petitioner contends that, in his capacity as an S corporation shareholder, he is entitled to deduct 20 percent of M&L's losses for the years in issue.  See sec. 1366(a)(1); see also sec. 1366(d)(1) (limiting such deductions to the shareholder's adjusted basis in the corporate stock).  While petitioner bears the burden of establishing that M&L actually incurred losses for the years in issue, Burke v. Commissioner, T.C. Memo. 1995-608, he has failed to produce sufficient evidence to substantiate such losses.  Nevertheless, he contends that this Court should apply the rule of Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), which provides that when taxpayers establish that they incurred an expense, the Court may estimate

the amount of the expense.  M&L did not file Federal income tax returns for the years in issue.  Moreover, petitioner did not present sufficient evidence to establish his basis in M&L or estimate the amount of M&L's losses.  Under such circumstances, a deduction based on the Cohan rule would be "'unguided largesse.'" Epp v. Commissioner, 78 T.C. 801, 807 (1982) (quoting Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).  Accordingly, we conclude that petitioner has failed to meet his burden of proof and hold that he is not entitled to claim losses relating to M&L.

III.  Self-Employment Tax

Section 1401(a) imposes a tax on the self-employment income of every individual.  Self-employment income consists of the net earnings from a trade or business carried on by an individual through a sole proprietorship or as a partner.  Sec. 1.1401-1(c), Income Tax Regs.

Respondent determined that during the years in issue M&L paid petitioner $477,071.27 that is subject to self-employment tax.  We conclude that $216,000 of the $477,071.27 received is appropriately characterized as either interest or dividends (i.e., the total amount of $6,000 monthly payments) and $36,000 is appropriately characterized as salary (i.e., the total amount of $1,000 monthly payments which petitioner used to lease a Cadillac).  Therefore, $252,000 (i.e., $216,000 + $36,000) is not

subject to self-employment tax. See secs. 1402(a)(2), 1402(c)(2), 3121(d)(1). Petitioner, however, failed to establish that the remaining $225,071.27 (i.e., $477,071.27 - $252,000) was not net earnings from a trade or business carried on by him in his individual capacity. Indeed, petitioner acknowledged that he received an undetermined amount of finder's fees from M&L investors and brokers. Accordingly, we hold that he is liable for self-employment tax on $225,071.27.

IV. Additions to Tax and Accuracy-Related Penalties

Respondent determined that petitioner was liable for additions to tax for failing to file his Federal income tax returns in a timely manner as well as an addition to tax and accuracy-related penalties for negligence.

Section 6651(a) imposes an addition to tax for failure to file Federal income tax returns in a timely manner. Petitioner introduced no evidence relating to this issue. Accordingly, we hold that he is liable for the section 6651(a) additions to tax.

Section 6653(a), which is applicable to petitioner's 1988 tax year, imposes an addition to tax if any part of an underpayment is attributable to negligence or disregard of rules or regulations. Section 6662, which is applicable to petitioner's 1989 and 1990 tax years, imposes an accuracy-related penalty on the portion of an underpayment that is attributable to negligence or disregard of rules or regulations. Negligence is

the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985). Section 6001 provides that a taxpayer has an obligation to maintain adequate books and records.

Petitioner did not maintain adequate books and records and failed to exercise due care in reporting his income. Accordingly, we hold that he is liable for the section 6653(a) addition to tax and section 6662 accuracy-related penalties.

All other arguments raised by the parties are either irrelevant or without merit.

To reflect the foregoing,

Decision will be entered under Rule 155.