T.C. Memo. 2013-115

UNITED STATES TAX COURT

ALBERT F. MARTELL II AND TAFI M. MARTELL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6563-11.                    Filed April 24, 2013.

Kevan P. McLaughlin, Richard A. Carpenter, and Alexandra C. Eaker, for
petitioners.

Donald D. Priver, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge: Respondent determined a deficiency in petitioners'

Federal income tax of $28,202 and an accuracy-related penalty under section

[*2] 6662(a)[1] of $5,604 for 2007. The issues for decision are: (1) whether

petitioners had income of $29,458 that they failed to report on Schedule C, Profit or

Loss From Business, for 2007; (2) whether petitioners' unreported Schedule C

income, if any, is subject to self-employment tax; (3) whether petitioners are entitled

to deduct other business expenses of $63,000 that they claimed on the Schedule C

attached to their 2007 Form 1040, U.S. Individual Income Tax Return; (4) whether

petitioners are entitled to deduct unreimbursed employee business expenses of

$19,001 that they claimed on the Schedule A, Itemized Deductions, attached to their

2007 return; and (5) whether petitioners are liable for the accuracy-related penalty

under section 6662(a).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of

facts is incorporated herein by this reference. Petitioners resided in California when

they petitioned this Court.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue
Code (Code) as amended and in effect for the year at issue, and all Rule references
are to the Tax Court Rules of Practice and Procedure. Some monetary amounts
have been rounded to the nearest dollar.

**[*3]** I.    Background

During the year in issue Albert F. Martell II was employed as a salesperson for SG Wholesale Roofing Supplies (SG Wholesale).  SG Wholesale issued to Mr. Martell a Form W-2, Wage and Tax Statement, for 2007.  The Form W-2 shows that Mr. Martell received total wages, tips, and other compensation (collectively, compensation) of $146,437.  The Form W-2 also shows that SG Wholesale withheld from Mr. Martell's compensation Federal income tax, Social Security tax, Medicare tax, and State income tax of $9,100, $6,045, $2,145, and $3,423, respectively.  Additionally, box 14 of the Form W-2 lists other amounts, as follows:

| | |
|---|---|
| S125 | $1,475 |
| AUTOA | 7,800 |
| CASDI | 500 |

II.    Petitioners' Tax Reporting

On their Form 1040 for 2007 petitioners claimed four exemptions and reported wages of $146,437; interest income of $44; taxable refunds, credits, or offsets of State and local income taxes of $4,178; a business loss of $66,133; itemized deductions of $53,604; and taxable income of $17,322.

On the Schedule A attached to their 2007 return petitioners reported unreimbursed employee business expenses of $19,001.  Petitioners calculated their

**[\*4]** reported unreimbursed employee business expenses on an attached Form 2106, Employee Business Expenses. On the Form 2106 petitioners reported that Mr. Martell paid vehicle expenses of $16,680, additional business expenses of $1,785, and meals and entertainment expenses of $1,072.

On the Schedule C attached to their 2007 return petitioners reported income, expenses, and net loss from "The Net Tech", a "computer networking" business owned by Mr. Martell, as follows:

| | |
|---|---:|
| Other income | $2,800 |
| Gross income | 2,800 |
| | |
| Commissions and fees | $1,800 |
| Depreciation | 850 |
| Legal and professional services | 200 |
| Office expense | 300 |
| Other expenses | [1]63,000 |
| Total expenses | 66,150 |
| | |
| Tentative loss | ($63,350) |
| Expenses for business use of home | 2,783 |
| Net loss | (66,133) |

[1]On part V of the Schedule C petitioners reported that this expense was a "business loan".

III.   Respondent's Bank Deposits Analysis and the Notice of Deficiency

Respondent conducted an analysis of the deposits into petitioners' bank accounts (bank deposits analysis). Respondent's bank deposits analysis showed

[*5] that petitioners had unreported taxable income of $29,458. The bank deposits analysis calculated this amount by subtracting various nontaxable or previously reported items from total deposits into petitioners' bank accounts, as follows:

| | |
|---|---|
| Total deposits | $271,362 |
| Total nontaxable and reported items | 241,904 |
| Unreported income | 29,458 |

The bank deposits analysis calculated the total deposits made into petitioners' bank accounts in 2007, as follows:

| Account | Amount |
|---|---|
| Wells Fargo checking | $201,753 |
| Wells Fargo savings | 48,897 |
| North Island Credit Union checking | 20,707 |
| North Island Credit Union savings | 5 |
| Total | 271,362 |

The bank deposits analysis subtracted the following nontaxable or reported items from the total deposits into petitioners' bank accounts:

| [*6] Nontaxable or reported item | Amount |
| --- | --- |
| Home equity line advance | $27,237 |
| Per exam net wages (from SG Wholesale) | 125,215 |
| Online transfers from Wells Fargo savings | 17,790 |
| Online transfers from Wells Fargo checking | 30,817 |
| Check transfers to North Island Credit Union checking | 17,500 |
| Federal and Franchise Tax Board refunds | 16,228 |
| Nontaxable items | 415 |
| Debit card credits | 3,600 |
| Interest income | 44 |
| Schedule C other income | 2,800 |
| De minimis accepted variance | 258 |
| Total nontaxable and reported items | 241,904 |

After conducting the bank deposits analysis and examining petitioners' 2007 return, respondent issued a notice of deficiency to petitioners for 2007. In the notice of deficiency respondent determined that (1) petitioners failed to report Schedule C income of $29,458 for 2007, (2) petitioners' unreported Schedule C income is subject to self-employment tax, (3) petitioners are not entitled to their claimed $63,000 Schedule C deduction for other business expenses, (4) petitioners are not entitled to their claimed $19,001 Schedule A deduction for unreimbursed employee business expenses, and (5) petitioners are liable for an accuracy-related penalty under section 6662(a).[2]

---

[2]At trial we reserved ruling on respondent's objection to Exhibit 20-P, which is a one-page document that purports to list various assets acquired by The Net Tech. Petitioners failed to overcome respondent's objection to that exhibit at trial

(continued...)

[*7]                                         OPINION

I.      Unreported Schedule C Income

        A.      Burden of Proof

        Generally, the Commissioner's determination of a deficiency is presumed

correct, and the taxpayer bears the burden of proving that the determination is

improper.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

However, if a taxpayer produces credible evidence[3] with respect to any factual

issue relevant to ascertaining the taxpayer's liability for any tax imposed by

subtitle A or B of the Code and satisfies the requirements of section 7491(a)(2),

the burden of proof on any such issue shifts to the Commissioner.  Sec.

7491(a)(1).  Section 7491(a)(2) requires a taxpayer to demonstrate that he or she

(1) complied with requirements under the Code to substantiate any item, (2)

maintained all records required under the Code, and (3) cooperated with

_____

[2](...continued)
and, in any event, they do not rely on the exhibit on brief.  Accordingly, we do not
admit the exhibit.

        [3]"'Credible evidence is the quality of evidence which, after critical analysis,
the court would find sufficient upon which to base a decision on the issue if no
contrary evidence were submitted (without regard to the judicial presumption of IRS
correctness).'"  Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R.
Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).

[*8] reasonable requests by the Secretary[4] for witnesses, information, documents, meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

The U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has held that for the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must establish some evidentiary foundation connecting the taxpayer with the income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported income, Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982). If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the unreported income adjustment was arbitrary or erroneous. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.

---

[4]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

**[*9]** Petitioners reported income and expenses from Mr. Martell's business, The Net Tech, on the Schedule C attached to their 2007 return. Additionally, Mr. Martell worked as a salesman for SG Wholesale. Respondent introduced checks written to Mr. Martell by several of his customers that petitioners deposited into their bank accounts but that they did not report as taxable income. The checks, left unexplained, are evidence that Mr. Martell engaged in side transactions with customers either as part of Mr. Martell's Schedule C business, The Net Tech, or as part of some other profit-making purpose. Respondent, therefore, introduced evidence that Mr. Martell had income-producing activities during 2007, see Weimerskirch v. Commissioner, 596 F.2d at 361-362, and that petitioners actually received unreported income, see Edwards v. Commissioner, 680 F.2d at 1270-1271. Accordingly, petitioners would bear the burden of proving that respondent's determination is incorrect, unless they demonstrate that the burden of proof should shift to respondent under section 7491(a). Petitioners do not contend that they met the requirements of section 7491(a)(1) and (2), and the record confirms that they did not meet the requirements of section 7491(a)(2). Accordingly, the burden of proof remains on petitioners.

**[*10]** B.     Bank Deposits Method

Gross income includes "all income from whatever source derived". Sec. 61(a). A taxpayer must maintain books and records establishing the amount of his or her gross income. Sec. 6001. If a taxpayer fails to maintain and produce the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989); sec. 1.446-1(b)(1), Income Tax Regs. The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." Petzoldt v. Commissioner, 92 T.C. at 687.

The bank deposits method is a permissible method of reconstructing income. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); see also Kudo v. Commissioner, T.C. Memo. 1998-404, 76 T.C.M. (CCH) 817, 829 (1998), aff'd, 11 Fed. Appx. 864 (9th Cir. 2001). Bank deposits constitute prima facie evidence of income. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The Commissioner need not show the likely source of a deposit treated as income, but the Commissioner "must take into account any nontaxable source or deductible expense of which * * * [he] has knowledge" in reconstructing income using the bank deposits method. Clayton v. Commissioner, 102 T.C. at 645-646. However,

[*11] the Commissioner need not follow any "leads" suggesting that a taxpayer has deductible expenses. DiLeo v. Commissioner, 96 T.C. 858, 872 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). After the Commissioner reconstructs a taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the bank deposits analysis is unfair or inaccurate. See Clayton v. Commissioner, 102 T.C. at 645; DiLeo v. Commissioner, 96 T.C. at 883. The taxpayer must prove that the reconstruction is in error and may do so, in whole or in part, by proving that a deposit is not taxable. See Clayton v. Commissioner, 102 T.C. at 645.

The record is unclear regarding whether respondent's revenue agent asked petitioners for The Net Tech's books and records and whether they produced them. However, petitioners did not introduce The Net Tech's books and records at trial, and the record as a whole does not convince us that respondent erred in relying on the bank deposits method to test for unreported income. This is particularly so because Mrs. Martell testified that she did not produce petitioners' bank records when they were requested, which led respondent to summon the bank records directly from petitioners' banks. We conclude from the record before us that respondent reasonably relied on the bank deposits method to determine petitioners' income, and petitioners bear the burden of proving that respondent's

**[*12]** bank deposits analysis is unfair or inaccurate.  See sec. 446(b); Petzoldt v.

Commissioner, 92 T.C. at 693; sec. 1.446-1(b)(1), Income Tax Regs.

C.     Whether Respondent's Bank Deposits Analysis Is Inaccurate

Petitioners contend that respondent's bank deposits analysis is inaccurate in

several respects.  We address each of petitioners' contentions in turn.

1.     Cash Hoard

Petitioners contend that respondent's bank deposits analysis is inaccurate

because respondent failed to determine petitioners' cash on hand.  Respondent

contends that a cash-on-hand analysis is not required and that petitioners do not

contend that any of the deposits were made with accumulated cash on hand.

When challenging the Commissioner's bank deposits analysis the taxpayer

has the burden of proving the amount of any cash hoard accumulated before the

tax year at issue and the amount of the cash hoard deposited during the year in

issue.  See MacGregor v. Commissioner, T.C. Memo. 2010-187, 100 T.C.M.

(CCH) 170, 176-177 (2010), aff'd, ____ Fed. Appx. ____, 111 A.F.T.R.2d (RIA)

2013-314 (9th Cir. Dec. 21, 2012); Kudo v. Commissioner, 76 T.C.M. (CCH) at

832.  Petitioners have failed to introduce any credible evidence showing that they

maintained a cash hoard or that any of the cash deposits identified in respondent's

[*13] bank deposits analysis were accumulated in a prior year.[5] Accordingly, we find that petitioners' contention is unsupported and does not warrant an adjustment to respondent's bank deposits analysis.

### 2. Mr. Martell's Wages From SG Wholesale

Petitioners contend that respondent's bank deposits analysis is inaccurate because it properly accounts for only $125,215 of the amount that Mr. Martell received from SG Wholesale. Respondent contends that the bank deposits analysis properly accounted for the amount shown as received by Mr. Martell on the Form W-2.

The record contains copies of checks that SG Wholesale issued to Mr. Martell. Some of the checks state "Payroll Check", and some of the checks state

---

[5]In their answering brief petitioners contend that some of the cash deposits are from repayments of personal loans to Keith Kofed. Mr. Martell testified that Mr. Kofed was a family friend, he lent money to Mr. Kofed in 2006 and 2007, and Mr. Kofed partially repaid him with cash. Petitioners introduced copies of checks petitioners wrote to Mr. Kofed in 2007, but they introduced no credible evidence regarding the nature of the payments to Mr. Kofed and did not call Mr. Kofed to testify. Additionally, petitioners failed to introduce any corroborating evidence showing that Mr. Kofed repaid petitioners with cash in 2007. We do not find Mr. Martell's self-serving, uncorroborated testimony on this matter to be credible. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

[*14] "General Account".[6]  Mr. Martell credibly testified that a $7,800 item that is listed in box 14 of his Form W-2 from SG Wholesale represents an annual auto allotment, and he also testified that a $1,475 item that is also listed in that box represents a fuel and miscellaneous expense reimbursement.  We find that the checks that state "General Account" were reimbursements to Mr. Martell for costs he incurred as an employee of SG Wholesale.[7]  Respondent does not allege that any of the deposits from SG Wholesale are unreported, taxable income.  However, because copies of at least some of the checks from SG Wholesale are not in the record, we must rely, in part, on the amounts shown on the Form W-2 in determining the total amounts of deposits from SG Wholesale in 2007.

Mr. Martell's Form W-2 from SG Wholesale shows that he received compensation of $146,437 from SG Wholesale in 2007.  SG Wholesale withheld from Mr. Martell's compensation Federal income tax, Social Security tax, Medicare tax, and State income tax of $9,100, $6,045, $2,154, and $3,423, respectively.  Mr. Martell, therefore, received net compensation of $125,715 from

[6]The record contains copies of checks that state "Payroll Check" in amounts totaling $115,403 and copies of checks that state "General Account" in amounts totaling $8,715.

[7]Mr. Martell credibly testified that he submitted monthly expense reports, along with attached receipts, to SG Wholesale.  Respondent has not disputed this testimony.

[*15] SG Wholesale in 2007.[8]  Mr. Martell also received reimbursements from SG Wholesale of at least $8,715.  See supra pp. 13-14 and note 6.  Accordingly, we conclude that petitioners received $134,430 in reported income or nontaxable reimbursements from SG Wholesale in 2007 and that, therefore, an additional $9,215 must be excluded in calculating their alleged unreported Schedule C income.

### 3.    December 31, 2007, Deposit From SG Wholesale

Petitioners contend that respondent's bank deposits analysis is inaccurate because it includes a $18,064 deposit from SG Wholesale on December 31, 2007, and they never deposited a check in that amount.  Exhibit 4-R contains copies of

---

[8]Respondent's bank deposits analysis concluded that Mr. Martell received net wages of $125,215 from SG Wholesale in 2007.  The record establishes that the correct amount of Mr. Martell's wages is $125,715, and we so find.  Respondent contends on brief that the revenue agent calculated this amount by additionally subtracting $500 that SG Wholesale purportedly withheld from Mr. Martell's compensation for California State disability insurance.  The record, however, does not establish that the $500 item that is listed in box 14 of Mr. Martell's Form W-2 from SG Wholesale represented amounts paid for disability insurance or that this amount was withheld from Mr. Martell's compensation.  See sec. 106(a) (employer-provided coverage under an accident or health plan generally not included in gross income of an employee).  But see LeBloch v. Commissioner, 311 Fed. Appx. 960, 961 & n.1, 962 (9th Cir. 2009) (discussing computation of a taxpayer's "wages less withholdings" for purposes of a bank deposits analysis and including amounts paid for California State disability insurance in withholdings), aff'g in part, rev'g in part, and remanding T.C. Memo. 2007-145.  We also note that the other amounts listed in box 14 were not withheld from Mr. Martell's compensation.

[*16] checks for $1,352, $764, and $15,948 from SG Wholesale, totaling $18,064, and the record shows that petitioners deposited these checks into their Wells Fargo savings account on December 31, 2007. Accordingly, we find that petitioners' contention is inaccurate and that no adjustment to respondent's bank deposits analysis is required.

### 4. Combining Checks

Petitioners contend that respondent's bank deposits analysis is inaccurate because it combines two checks dated November 6, 2007. Petitioners do not explain how this affects the accuracy of the bank deposits analysis. Accordingly, we find that no adjustment to respondent's bank deposits analysis is required.

### 5. November 2007 Transfer Deposits

Petitioners contend that respondent's bank deposits analysis is inaccurate because it fails to properly account for the fact that $3,000 of $3,002 deposited into petitioners' Wells Fargo savings account in November 2007 was transferred from petitioners' Wells Fargo checking account. In fact, respondent's bank deposits analysis properly accounted for this transfer. Accordingly, we find that no adjustment to respondent's bank deposits analysis is required.

**[*17]**      6.      Home Equity Line of Credit

Petitioners contend that respondent's bank deposits analysis is inaccurate because it fails to include an analysis of their home equity line of credit. In fact, respondent's bank deposits analysis properly accounted for the home equity line of credit and did not include a $27,237 deposit on August 21, 2007, from the home equity line of credit in determining petitioners' unreported Schedule C income. Accordingly, we reject petitioners' contention and find that no adjustment to respondent's bank deposits analysis is required.

7.      Whether Various Deposits Were Nontaxable Gifts or Loan Reimbursements

Petitioners contend that respondent's bank deposits analysis is inaccurate because it includes $11,107 of nontaxable gifts and loan reimbursements in their gross receipts. We will address each of the deposits at issue in turn.

a.      $729 From Richard and Nancy Culbertson

Richard and Nancy Culbertson are Ms. Martell's parents. The Culbertsons wrote three checks to petitioners in 2007 from a family trust account. The first check, dated March 7, 2007, is for $229 and states "Disney/cookies" in the memo line of the check. The other two checks, both dated December 25, 2007, are for $250 each. We find that these deposits were nontaxable gifts to petitioners.

[*18] Accordingly, respondent erroneously included these deposits in petitioners' Schedule C income.

b.      $1,950 From Edward and Lori Imgrund

Petitioners both testified that Edward and Lori Imgrund are longtime family friends. The Imgrunds wrote checks dated November 2 and December 10, 2007, to Mr. Martell for $650 and $1,300, respectively. The memo line on the December 10, 2007, check states "TIRES". Petitioners both credibly testified that they bought dune buggy tires for the Imgrunds and that the December 10, 2007, check was a repayment for the amount they advanced for the tires. Mr. Martell also credibly testified that the November 2, 2007, check was also a reimbursement of amounts petitioners advanced. We find that these deposits were nontaxable reimbursements to petitioners. Accordingly, respondent erroneously included these deposits in petitioners' Schedule C income.

c.      $650 From Alejandra and John Carroll

Petitioners both testified that Alejandra and John Carroll are longtime family friends. The Carrolls wrote a check dated November 5, 2007, to Mr. Martell for $650. Ms. Martell credibly testified that the Carrolls had no business dealings with The Net Tech and that these checks were reimbursements for amounts petitioners advanced. In part because the timing and amount of this

[*19] deposit closely corresponds with the deposits from the Imgrunds, we find that this deposit was a nontaxable reimbursement to petitioners. Accordingly, respondent erroneously included these deposits in petitioners' Schedule C income.

### d.   $120 From Melissa Packwood

Ms. Martell testified that Melissa Packwood was the president of petitioners' children's football association. Ms. Packwood wrote checks dated September 27, November 1, and November 2, 2007, to Ms. Martell for $17, $86, and $17, respectively. The memo lines on the September 27, November 1, and November 2, 2007, checks state "water bottles", "Jerseys - away", and "water @ Tem. Game", respectively. Ms. Martell credibly testified that these checks were reimbursements for amounts petitioners advanced for the team. We find that these deposits were nontaxable reimbursements for amounts petitioners advanced. Accordingly, respondent erroneously included these deposits in petitioners' Schedule C income.

### e.   $300 From Scott Culbertson

Scott Culbertson is Ms. Martell's brother. He wrote a check dated October 1, 2007, for $300 to Mr. Martell. Mr. Martell testified that this check was a payment for amounts petitioners advanced on Scott Culbertson's behalf. We find

[*20] that this deposit was a nontaxable repayment. Accordingly, respondent erroneously included this deposit in petitioners' Schedule C income.

### f. $500 From Lite Stone Concrete

Lite Stone Concrete wrote a check dated October 5, 2007, to Mr. Martell for $500. Mr. Martell credibly testified that this check was a reimbursement from the owner of Lite Stone Concrete for part of the cost of jerseys for petitioners' children's football team. We find that this deposit was a nontaxable reimbursement to petitioners. Accordingly, respondent erroneously included these deposits in petitioners' Schedule C income.

### g. $100 From Disney Mobile

Petitioners received wireless services from Disney Mobile in 2007. Disney Mobile wrote two checks to Mr. Martell for $50 each. Ms. Martell testified that these checks were reimbursements for overpayments on two of petitioners' mobile phone accounts with Disney Mobile in 2007. We find that these deposits were nontaxable reimbursements. Accordingly, respondent erroneously included these deposits in petitioners' Schedule C income.

### h. $7.50 From Hadleigh Int'l Trading Group

Hadleigh Int'l Trading Group wrote a check dated July 16, 2007, to Ms. Martell for $7.50. The memo line on the check states "Refund". We find that this

[*21] deposit was a nontaxable refund. Accordingly, respondent erroneously included this deposit in petitioners' Schedule C income.

i. $2,450 From Royal Roof Co.

Mr. Martell testified that he sometimes purchased supplies for his customers as a professional courtesy. Royal Roof Co. wrote checks dated October 5, October 18, and November 26, 2007, to Mr. Martell for $1,000, $700, and $750, respectively. The memo line on the November 26, 2007, check states "Supplies -- MATERIAL". Mr. Martell testified that these checks were reimbursments for materials and supplies that he purchased for Royal Roof Co. However, petitioners did not call anyone from Royal Roof Co. to testify regarding the nature of these deposits, and they have failed to identify the underlying expenditures in their financial records. Additionally, because petitioners have failed to introduce any credible evidence regarding the business operations of The Net Tech, we cannot infer that these payments were related to Mr. Martell's employment with SG Wholesale. We do not find Mr. Martell's vague and uncorroborated testimony on this matter to be credible. See Tokarski v. Commissioner, 87 T.C. at 77. Accordingly, we find that no adjustment to respondent's bank deposits analysis is required.

**[*22]**                    j.        $4,300 From Roof Construction

Roof Construction wrote checks dated October 26, November 7, and

December 14, 2007, to Mr. Martell for $1,400, $1,400, and $1,500 respectively.

Mr. Martell testified that these checks were reimbursements.  Petitioners did not call

anyone from Roof Construction to testify regarding the nature of these deposits.  We

do not find Mr. Martell's vague and uncorroborated testimony on this matter to be

credible.  See id.  Accordingly, we find that no adjustment to respondent's bank

deposits analysis is required.

II.     Self-Employment Tax on Petitioners' Unreported Schedule C Income

Self-employment tax is imposed on an individual's self-employment income.

Sec. 1401(a) and (b).  Self-employment income is defined as "net earnings from

self-employment."  Sec. 1402(b).  Net earnings from self-employment is income

derived from a trade or business carried on by the individual, less any allowable

deductions.  Sec. 1402(a).

Respondent determined that petitioners' unreported Schedule C income is

subject to self-employment tax.  Petitioners contend that none of the unreported

deposits were connected to The Net Tech.  However, petitioners failed to

introduce credible evidence showing that their unreported income is not derived

from a trade or business carried on by them.  Accordingly, petitioners are liable for

[*23] self-employment tax on their unreported Schedule C income. See, e.g.,

Kazhukauskas v. Commissioner, T.C. Memo. 2012-191, 104 T.C.M. (CCH) 31, 37-

38 (2012); Parrish v. Commissioner, T.C. Memo. 1997-474, 74 T.C.M. (CCH) 964,

967 (1997), aff'd, 168 F.3d 1098 (8th Cir. 1999).

III.    Petitioners' $63,000 Schedule C Expense

Petitioners claimed a $63,000 deduction for a "business loan" on the

Schedule C attached to their 2007 return. Respondent disallowed the deduction.

Section 162(a) permits a taxpayer to deduct ordinary and necessary expenses

paid or incurred in carrying on a trade or business. See Commissioner v. Lincoln

Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971). A trade or business expense is

ordinary for purposes of section 162 if it is normal or customary within a particular

trade, business, or industry, and it is necessary if it is appropriate and helpful for the

development of the business. Commissioner v. Heininger, 320 U.S. 467, 471

(1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940).

Petitioners failed to introduce evidence showing that they are entitled to this

claimed deduction, and they failed to address this issue on brief. Accordingly, we

conclude that petitioners are not entitled to this deduction. See Rules 123(a) and

(b), 142(a)(1), 151(e)(5); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84

(1992); Lunsford v. Commissioner, 117 T.C. 183, 187 n.6 (2001).

[*24] IV.    Petitioners' Claimed Unreimbursed Employee Business Expenses

A.    Unreimbursed Employee Business Expenses

The term "trade or business" as used in section 162(a) includes the trade or business of being an employee.  See Primuth v. Commissioner, 54 T.C. 374, 377 (1970).  However, to obtain a deduction for expenses incurred through the performance of services as an employee, the taxpayer must not have the right to reimbursement for such expenses from his or her employer.  See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533.

B.    Burden of Proof

Generally, the taxpayer bears the burden of proving that he is entitled to any claimed deduction.  See Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. at 84.  This includes the burden of substantiation.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), (e), Income Tax Regs.  If, however, a taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability for any tax imposed by subtitle A or B of the Code and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner.  Sec. 7491(a)(1).

[*25] Petitioners do not contend that they met the requirements of section 7491(a)(1) and (2), and the record confirms that they did not. Accordingly, the burden of proof as to this factual issue remains with petitioners.

### C. Whether the Disputed Items Were Reimbursable

Mr. Martell testified that he was entitled to reimbursement of only $250 per month from SG Wholesale for business expenses relating to his employment with SG Wholesale. However, Mr. Martell also testified that a $7,800 item that is listed in box 14 of his Form W-2 from SG Wholesale represents an annual auto allotment and that a $1,475 item that is also listed in that box represents a fuel and miscellaneous expense reimbursement.

Petitioners introduced Mr. Martell's employment agreement with SG Wholesale dated January 3, 2005. However, the employment agreement is not signed on behalf of SG Wholesale and does not include the $7,800 auto allotment but instead includes a $250 per month reimbursement provision. Petitioners have not introduced Mr. Martell's employment agreement for 2007, and we do not find Mr. Martell's self-serving, uncorroborated testimony to be credible. See Tokarski v. Commissioner, 87 T.C. at 77. Accordingly, we find that petitioners have failed to prove that Mr. Martell's claimed unreimbursed employee business expenses were not reimbursable, see Orvis v. Commissioner, 788 F.2d at 1408, and we,

**[\*26]** therefore, conclude that petitioners are not entitled to a deduction for Mr. Martell's claimed unreimbursed employee business expenses.

## V. Accuracy-Related Penalty Under Section 6662(a)

Section 6662(a) and (b)(1) and (2) authorizes the Commissioner to impose a 20% penalty on an underpayment of tax that is attributable to, among other things, (1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. Only one section 6662 accuracy-related penalty may be imposed with respect to any given portion of an underpayment. New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs.

The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard of rules or regulations "is 'careless' if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position" and "is 'reckless' if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances

**[\*27]** which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe."  Sec. 1.6662-3(b)(2), Income Tax Regs.; see also Neely v. Commissioner, 85 T.C. 934, 947 (1985).  An understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate.  Sec. 6662(d)(2)(A).  An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which the taxpayer shows that there was reasonable cause and that he or she acted in good faith.  Sec. 6664(c)(1).  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Id.

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient

[*28] evidence indicating that it is appropriate to impose the penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had reasonable cause or substantial authority for the position. See Higbee v. Commissioner, 116 T.C. at 446-447.

We have found that petitioners (1) failed to report Schedule C income, (2) are liable for self-employment tax on their unreported income, (3) are not entitled to their claimed $63,000 Schedule C deduction for other expenses; and (4) are not entitled to their claimed $19,001 Schedule A deduction for unreimbursed employee business expenses. The evidence shows that the resulting underpayment of petitioners' Federal income tax is the product of petitioners' negligence and disregard of rules and regulations. Respondent has, therefore, met his burden of producing evidence showing that a section 6662(a) penalty for an underpayment of tax attributable to negligence or disregard of rules or regulations with respect to the understatement is appropriate. Petitioners have not produced any credible evidence that they acted with reasonable cause and in good faith with respect to the underpayment. Accordingly, petitioners are liable for a section 6662(a)

**[\*29]** penalty for an underpayment of tax attributable to negligence or disregard of rules or regulations.

Alternatively, to the extent that the Rule 155 computations show that the understatement of tax exceeds the greater of 10% of the tax required to be shown on the return or $5,000, see sec. 6662(d)(1)(A), respondent has met his burden of producing evidence showing that a section 6662(a) penalty for an underpayment of tax attributable to a substantial understatement of income tax is appropriate. Petitioners have not produced any credible evidence that they acted with reasonable cause and in good faith with respect to the underpayment. Accordingly, petitioners would then be liable for a section 6662(a) penalty for an underpayment of tax attributable to a substantial understatement of income tax. However, as noted, petitioners will only be liable for one section 6662(a) penalty with respect to any portion of the underpayment of tax.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.
